IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTIE BEYERS                                        PLAINTIFF

V.                                    NO. 10-5132

MICHAEL ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Christie Beyers, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  <u>See</u>

42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her applications for DIB and SSI on July 9, 2007, alleging an

inability to work since June 1, 2007, due to "bi-polar/schizophrenia/depression/anxiety" and back

pain.  (Tr. 154, 158).  For DIB purposes, Plaintiff maintained insured status through December

31, 2011.  (Tr. 48).  An administrative hearing was held on June 29, 2009, at which Plaintiff

appeared with counsel and testified.  (Tr. 22-38).

By written decision dated November 23, 2009, the ALJ found that Plaintiff had an

-1-

impairment or combination of impairments that were severe - polysubstance abuse; mood disorder; and anxiety disorder. (Tr. 49). He also found that Plaintiff's impairments, including the substance use disorders, met sections 12.04, 12.06 and 12.09 of the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 50). The ALJ further found that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities; therefore, Plaintiff would continue to have a severe impairment or combination of impairments. (Tr. 52). However, the ALJ further found that if the Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that met or medically equaled any of the impairments listed. (Tr. 52). The ALJ found that if Plaintiff stopped the substance use, she would have the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but would have nonexertional limitations and would have moderate limitations in maintaining social functioning and concentration, persistence and pace. Moderately limited means that there is more than a slight limitation but the person can perform in a satisfactory manner. The claimant could perform work where interpersonal contact is incidental to the work performed and where complexity of tasks is learned by rote with few variables and little judgment. The supervision required would be simple, direct and concrete.

(Tr. 53). The ALJ found that if Plaintiff stopped the substance use, she would be unable to perform past relevant work. (Tr. 56). Further, with the help of a vocational expert (VE), he found that if Plaintiff stopped the substance use, considering her age, education, work experience, and RFC, there would be jobs Plaintiff would be able to perform, such as kitchen helper/dishwasher; packager, machine; and maid/hotel-motel. (Tr. 56). The ALJ concluded that since Plaintiff would not be disabled if she stopped the substance use, her substance use disorder was a contributing factor material to the determination of disability and thus, Plaintiff

-2-

has not been disabled within the meaning of the Act at any time from the alleged onset date through the date of the decision.  (Tr. 58).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on June 23, 2010.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 5).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 8, 9).

## II.   Evidence Presented:

Plaintiff was born in 1968 and her past work included receptionist, office manager, hostess in a restaurant, customer service manager, and most recently, an income tax preparer. (Tr. 159).

The medical evidence of record reflects that Plaintiff was admitted to Siloam Springs Memorial Hospital on September 5, 2006, for anxiety and suicidal ideation.  (Tr. 330).  Plaintiff was discharged from the hospital and transferred to Vista Health facility on September 9, 2006, where she was treated until September 20, 2006.  (Tr. 259-272).  The admitting diagnosis at Vista Health was:  major depressive disorder, recurrent, severe, no psychotic features; panic disorder with agoraphobia; withdrawal from Paxil by history; back pain, lumbar; and decreased "rom" (range of motion) lumbar spine.  (Tr. 272).  On September 9, 2006, Richard A. Lloyd, M.D. FAPA, with Vista Health, conducted an Inpatient Psychiatric Evaluation.  (Tr. 273-275). Dr. Lloyd noted that Plaintiff moved from Texas to Arkansas in December of 2005**,** and was living with her mother, 19 year old brother, and a nephew.  She was noted to have been married and divorced twice, and was working at that time through a staffing agency as a receptionist.  (Tr. 274).  Plaintiff reported anxiety and panic attacks to Dr. Lloyd, and he noted that she was angry

-3-

and irritable.   He found her level of intellectual functioning to be in the average range.   His

diagnosis was:

| Axis I: | Major depression, recurrent, severe, without psychotic features |
| | Panic Disorder with agoraphobia |
| | Withdrawal from Paxil CR by history |
| Axis II: | No diagnosis |
| Axis III: | Low back pain |
| Axis IV: | Problems with primary support group |
| | Problems related to social environment |
| | Problems related to interaction with legal system |
| Axis V: | GAF - 20 (on admission) |

(Tr. 275).  Dr. Lloyd found that Plaintiff's prognosis for ongoing control of the presenting

symptoms was fair, and was in part dependent upon the willingness and ability of the patient to

participate in treatment, to comply with treatment recommendations, to take medication as

prescribed, and to abstain from the use of nonprescribed chemical substances.  (Tr. 275).

On September 20, 2006, Plaintiff was discharged from Vista Health.  (Tr. 259-262).

In the discharge summary, Dr. Donnie Joe Holden noted that Plaintiff was admitted to Vista

Health because of suicidal ideation, with a plan to drive her car off a bridge on highway 69, on

the way to Texas, while on pills.  (Tr. 259).  Dr. Holden reported that Plaintiff had used

methamphetamine for six years until November 2005, and was currently on four years probation

for possession of methamphetamine.  Plaintiff had attempted to asphyxiate herself with carbon

monoxide one year prior to her admission to Vista Health.  Three weeks prior to her admission,

she had abruptly discontinued Paxil CR, 25 mg., because she ran out of the medication.  Plaintiff

had first used methamphetamine at the age of 30, and used it orally every day for 6 or 7 years.

(Tr. 259).  At discharge from Vista Health, Plaintiff was able to attend AA (Alcoholics

Anonymous) and apparently was able to identify fairly well with it.  She was voicing no

suicidality or homicidality.  Plaintiff appeared to be sufficiently improved to merit discharge.

(Tr. 261).  The final diagnosis was:

| | |
|---|---|
| Axis I: | Major depressive disorder, severe, without psychotic features |
| | Panic disorder with agoraphobia |
| Axis II: | None |
| Axis III: | Chronic pain, low back |
| Axis IV: | Primary support system |
| Axis V: | GAF 20 on admission, GAF 41 on discharge, GAF past year 0. |

(Tr. 261).

Plaintiff began outpatient therapy at Ozark Guidance, Inc., on September 25, 2006, and

Donna Copeland, EDS, LPC, LMFT, diagnosed Plaintiff with:

| | |
|---|---|
| Axis I: | Major depressive disorder, severe without psychotic features |
| | Panic disorder with agoraphobia |
| | Generalized anxiety disorder, rule out |
| | Amphetamine abuse - reports sustained full remission |
| Axis II: | Diagnosis deferred on Axis II |
| Axis III: | None known for Axis III - back pain |
| Axis IV: | Problems with primary support group - poor choices in relationships, just broke up with boyfriend[;] traumatic divorce in Texas 1 ½ years ago[;] Problems related to social environment - few friends, little peer support[;] Occupational problems - too anxious to stay at work; lost job at Gates due to psychiatric hospitalization. |
| Axis V: | GAF 42 |

(Tr. 297).  It was noted that Plaintiff's thought processes might have been impacted by six years

of daily use of methamphetamine, and that Plaintiff "has been clean about 1 year in November."

(Tr. 300).  Plaintiff continued to have outpatient treatment at Ozark Guidance, Inc., through 2006

and 2007, and on April 20, 2007, Plaintiff presented with excessive anxiety.  (Tr. 287).  She had

been fired two weeks prior to the visit, and had an increase of symptoms along with memory loss

and "talking as if she had not lost her job."  (Tr. 287).  Plaintiff's family was concerned since

there was a history of stroke in the family, and Plaintiff fell asleep on the sofa and they noticed

-5-

one side of her face seemed to draw down from eye to mouth. (Tr. 287). On June 6, 2007, Plaintiff presented herself to Ozark Guidance, Inc., with her mother, and told Diane H. Lyddon, MNSC, APN, that she was about to have a nervous breakdown. (Tr. 282). Plaintiff reported that she was not taking the Desipramine any longer and had been out of Lexapro for about 3 weeks. (Tr. 282).

On June 28, 2007, Plaintiff was taken to Siloam Springs Memorial Hospital because she had taken six Klonopin within a short period of time. (Tr. 377-378). According to the hospital report, Plaintiff denied suicidal ideation and stated that she took six Klonopin, "hoping for the rush." (Tr. 378). The clinical impression was "drug ingestion." (Tr. 379). On June 29, 2007, Dr. Theresa Farrow, of Ozark Guidance, Inc. reported that Plaintiff had been using Klonopin in an addictive fashion, and that she had taken 12 mg. of Klonopin in about 3 hours, to stop the panic. Dr. Farrow assessed Plaintiff with bipolar II, panic, substance abuse, with OD (overdose) the previous night due to addictive patterns of use of Klonopin - not suicidal. (Tr. 280).

On July 5, 2007, Dr. Farrow reported that Plaintiff was doing much better, but also reported that Plaintiff's parents called her and stated that Plaintiff was taking Seroquel "way too much, was very agitated, and totally out of control." (Tr. 279). Plaintiff apparently refused to be hospitalized, but her family took total control of her medications and "did a confrontation." She was thereafter doing much better. (Tr. 279). On August 3, 2007, Dr. Farrow reported that Plaintiff was much worse again. (Tr. 277). One of Plaintiff's friends, who was a nurse, gave Plaintiff Xanax, which Plaintiff thought helped more than the Klonopin. (Tr. 277). On August 5, 2007, Plaintiff was taken to Siloam Springs Memorial Hospital for a drug overdose. (Tr. 390). She had been found unresponsive, and was found to be poisoned by methadone. (Tr. 390). In

the Internal Medicine History and Physical, Plaintiff admitted taking methadone, which she received "from a friend." (Tr. 419). On August 10, 2007, Plaintiff was discharged from the hospital and transferred to Vista Health for inpatient mental health services. (Tr. 393). At Vista Health, on August 11, 2007, Plaintiff reported that "I took too much Methadone." (Tr. 487). The diagnosis upon admission was:

| | | |
|---|---|---|
| Axis I: | Primary Psychiatric Diagnosis | |
| | Bipolar type II by history | |
| | Generalized anxiety disorder | |
| | Substance abuse | |
| Axis II: | Personality factors - None | |
| Axis III: | Physical Factors - Status post methadone overdose | |
| Axis IV: | Psychosocial stressors - substance abuse problems | |
| Axis V: | GAF 20.  Highest in the past year 65 | |

(Tr. 489-490). Her prognosis was reported as fair. (Tr. 490). On August 23, 2007, Plaintiff was discharged from Vista Health.  (Tr. 484-486).  Plaintiff reported that her anti-depressant medications and her anti-anxiety medications were not working, and she started to increasingly use recreational drugs, including Oxycodone and Methadone, several times per week. (Tr. 484). At discharge, Plaintiff was reported as doing well.  She said that she was not having anxiety or depressive symptoms, and denied a craving for drugs or alcohol. (Tr. 484, 487).  The symptoms of depression and anxiety improved slowly and gradually, and after the first week of hospitalization, Plaintiff said she was not depressed or anxious.  She did not have any panic attacks, and seemed to be very calm and quiet. (Tr. 485).

On August 24, 2007, Plaintiff met with Dr. Farrow at Ozark Guidance, Inc.  She was clean and sober and going to meetings. (Tr. 500).  Plaintiff did, however, ask if she could have Klonopin. (Tr. 500). Dr. Farrow noted on the record that Plaintiff was to "get no more addictive

-7-

medications here." (Tr. 500).   On September 20, 2007, Donna Copeland saw Plaintiff and reported that she presented with a flat affect and staring eyes.  Plaintiff reported to her that she was not slipping back into using again, but that she was not going to meetings.  (Tr. 505).

On October 1, 2007, a Psychiatric Review Technique was completed by Kay M. Gale, wherein it was found that Plaintiff suffered from affective disorders, such as depression NOS; anxiety-related disorders, such as recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and a sense of impending doom occurring on the average of at least once a week;  and substance addiction disorder.  (Tr. 511-516).  Dr. Gale found Plaintiff had a mild degree of limitation in her restriction of daily living activities and in difficulties in maintaining social functioning and concentration, persistence, or pace, and that Plaintiff has had one or two episodes of decompensation, each of extended duration.  (Tr. 521).  Dr. Gale found that the current medical records indicated that Plaintiff was feeling better, was sustaining abstinence, and was therefore capable of unskilled work.  (Tr. 523). Dr. Gale also completed a Mental RFC Assessment on October 1, 2007, and found that Plaintiff was not significantly limited in 15 out of 20 categories, and was moderately limited in 5 out of 20 categories.  (Tr. 525).  She found that Plaintiff was able to "perform work where interpersonal contact is incidental to work performed, e.g. assembly work;  complexity of tasks is learned and performed by rote, with few variables, uses little judgment; supervision required is simple, direct and concrete.  Unskilled work."  (Tr. 527).

On February 29, 2008, Plaintiff reported to Dr. Farrow that she was just released from St. John's in Joplin after an overdose.[1]  (Tr. 672).  She was released from the hospital on

---

[1]There were no medical records of this hospital visit.

-8-

Klonopin, Buspar, Ambien, Neurontin, and Seroquel, and told Dr. Farrow that she wanted to stay

on these medications. (Tr. 672). On March 21, 2008, when Plaintiff next saw Dr. Farrow, she

reported that she slept better and was calmer on the Seroquel. She also tried to get Dr. Farrow

to prescribe Klonopin. (Tr. 671). However, Dr. Farrow believed that Plaintiff was still using

drugs, and was drug-seeking. (Tr. 671). Dr. Farrow continued to believe Plaintiff was still using

and drug seeking on April 21, 2008. (Tr. 666). On May 21, 2008, Diane H. Lyddon also felt that

Plaintiff was perhaps still drug-seeking. (Tr. 663).

On July 23, 2008, Dr. Farrow diagnosed Plaintiff with:

| | |
|---|---|
| Axis 1 | Panic disorder with agoraphobia |
| | Generalized anxiety disorder, rule out |
| | Amphetamine abuse - reports sustained full remission |
| | Bipolar II disorder |
| | Most recent episode depressed |
| Axis 2 | Diagnosis deferred |
| Axis 3 | back pain |
| Axis 4 | problems with primary support group - poor choices in relationships,[;] just broke up with boyfriend[;] traumatic divorce in Texas 1 ½ years ago |
| | Few friends, little peer support |
| | too anxious to stay at work; lost job at Gates due to psychiatric hospitalization |
| | financial worries with no job or source of income |
| Axis 5 | GAF 42 |

(Tr. 657). On August 12, 2008, Dr. Farrow reported that Plaintiff had discovered that when she

took 800 mg. of Seroquel, she would become impaired, so she was taking 400 mg., and it was

working well. (Tr. 656). On August 14, 2008, Donna Copeland reported that Plaintiff was more

withdrawn. (Tr. 654).

On August 22, 2008, an Order of Involuntary Admission to Decision Point was entered

by "Benton County Circuit Court Act 10." (Tr. 58). Plaintiff was sent to Decision Point for

-9-

detoxification.      (Tr. 600).      Upon admission, Plaintiff reported a history of using

methamphetamine, marijuana, cocaine, morphine, Hydrocodone, Oxycodone, Xanax, Klonopin,

and Ativan, and smoked ½ pack of cigarettes daily.  (Tr. 549-550).  At that time, she was taking

Seraquel, Lexapro, Neurontin, Ambien, and Klonopin.   (Tr. 552).   Plaintiff reported being

convicted of forgery of a prescription in the previous 12 months, and was on probation.  (Tr.

553).  Plaintiff was diagnosed at Decision Point with:

|          |                                                                |
|----------|----------------------------------------------------------------|
| Axis I:  | Sedative, Hypnotic, or Anxiolytic[2] Dependence                |
|          | Bi-polar disorder, panic disorder, anxiety disorder            |
| Axis II: | Schizophrenia                                                  |
| Axis III:| Back injury, migraines                                         |
| Axis IV: | Problems in social environment, occupational problems, problems interacting with the legal system |
| Axis V:  | GAF 40                                                         |

(Tr. 602).  On October 17, 2008, Plaintiff received a Certificate of Completion - Residential

Substance Abuse Treatment -  from Decision Point.  (Tr. 640-641).

On October 28, 2008, Plaintiff met with Donna Copeland, and although she was very

well groomed, she was using many repetitive movements throughout the session, and had a

jerkiness in her body language.  (Tr. 652).  Plaintiff denied she had been "using," but her hand

movements and jerkiness was noted by Ms. Copeland to sometimes accompany the use of

methamphetamine or other stimulants.  (Tr. 652).

On November 21, 2008, Dr. Farrow completed a Supplemental Questionnaire on RFC

of the Mentally Impaired Claimant.  (Tr. 253-255, 647-649).  In Dr. Farrow's supplement, she

found Plaintiff had a marked degree of impairment in her ability to respond appropriately to

---

[2]Anxiolytic - 1.  Antianxiety.  2.  Antianxiety agent.  Dorland's Illustrated Medical Dictionary 113 (31st ed. 2007).

-10-

supervision, in her ability to function independently on the job, in her ability to complete a normal workday, and in her ability to concentrate and attend to a task over an eight-hour period. Dr. Farrow found Plaintiff suffered from an extreme degree of impairment in her ability to exercise appropriate judgment and her ability to perform routine tasks on a regular and reliable basis without frequent absences. (Tr. 254-255). Also on November 21, 2008, Dr. Farrow found Plaintiff was doing much better and had been clean and sober for 86 days. (Tr. 651).

On January 26, 2009, Plaintiff met with Donna Copeland, who reported that she was concerned that Plaintiff was not being forthright about her progress. She found that Plaintiff continued to demonstrate some symptoms that might be related to stimulant use, such as jerking. (Tr. 693). Ms. Copeland encouraged Plaintiff to continue going to meetings and fulfilling her obligations. (Tr. 693).

On July 29, 2009, a Mental Diagnostic Evaluation was conducted by Dr. Terry Efird, at the request of the Social Security Administration. (Tr. 696-701). Dr. Efird noted some inconsistencies in Plaintiff's information, and that the manner in which the information was presented almost gave him the impression of some type of recitation. (Tr. 696). Plaintiff told Dr. Efird that she was taking her medication as prescribed, and side effects were denied. (Tr. 697). However, Plaintiff denied that her medications were beneficial. She described Klonopin as the only medication that helped her anxiety, and asked Dr. Efird if he could write her a prescription for it. (Tr. 697). Plaintiff denied the use of illegal substances. (Tr. 698). Dr. Efird reported that at one point in the evaluation, when he was typing some information into the computer, Plaintiff spontaneously stated "Lisa shut up" and that Lisa was reportedly Plaintiff's "friend." (Tr. 698). He also reported that Plaintiff appeared somewhat vague about the history

-11-

of substance abuse and forging prescriptions. (Tr. 698). Plaintiff indicated that "Lisa" showed

up when she was in jail in April of 2009, and that Lisa reportedly followed her around. Dr. Efird

found that drug-seeking behavior certainly appeared to be a possibility.   (Tr. 699).  Since

Plaintiff appeared to have some remarkable mental difficulties, and there were a number of

inconsistencies which raised questions regarding the reliability and validity of the reported

information, Dr. Efird felt that estimating a GAF was quite difficult and that the current

information "should be viewed with a degree of skepticism." (Tr. 700).  Dr. Efird diagnosed

Plaintiff with:

| | | |
|---|---|---|
| Axis I: | Major depressive disorder, severe, with psychotic features; panic disorder, with agoraphobia | |
| Axis II: | Personality disorder, NOS (cluster B and C traits) | |
| Axis V: | GAF 45-55 | |

(Tr. 700).  Dr. Efird found that Plaintiff's ability to perform most daily activities was impaired

by motivation, and that Plaintiff had the capacity to perform basic cognitive tasks required by

basic work- like activities. (Tr. 700).

On July 31, 2009, Dr. Efird prepared a Medical Source Statement of Ability to do Work-

Related Activities (Mental). He found that Plaintiff had a moderate to marked ability to

understand and remember complex instructions and to carry out complex instructions, and to

make judgment on complex work-related decisions. (Tr. 702).  He also found that Plaintiff's

judgment appeared to be impaired, and that Plaintiff had a moderate ability to interact

appropriately with the public, supervisors, co-workers, and to respond appropriately to usual

work situations and changes in a routine work setting. (Tr. 703).  He noted that Plaintiff had a

fairly extensive history of methamphetamine abuse, and mentioned having been abstinent for

-12-

about 3.5 years.   However, he also noted that Plaintiff had been arrested for forging a prescription, and had asked him for a prescription for Klonopin.  "Therefore, questions remain." (Tr. 703).

In an undated Disability Report - Adult, Plaintiff stated that the illnesses that limited her ability to work were "bi-polar/schizophrenia/depression/anxiety" and that "The Meth has fried my brain."  (Tr. 158).  She reported that her counselor told her that her anxiety would never go away, and that she took medication, but that her mother had to give it to her because she wanted to take more than prescribed because "I want that high."  (Tr. 158).  She reported that she also had back problems, but that she could not afford to get the operation she needed.  (Tr. 158). Plaintiff reported that during the day, she did not do much other than go to the restroom, hang around, and go to bed.  (Tr. 184).  She reported that she did not have any problem with personal care, but needed help taking her medicine.  (Tr. 185-186).  She reported that she did the laundry and dishes and went outside at least once a day.  (Tr. 186-187).

At the hearing held on June 29, 2009, Plaintiff stated that what was keeping her from being able to work was her nerves - that she heard voices all the time.  (Tr. 29).  She stated that she was taking medication to control her illnesses, and that sometimes they controlled them, but not to the full extent.  (Tr. 2().  She reported having anxiety attacks at least once every two weeks. (Tr. 30).  She also testified that she had been able to control the suicidal ideations.  (Tr. 33).

## III.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or

-14-

mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled

an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing

past relevant work; and (5) whether the claimant was able to perform other work in the national

economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience

in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138,

1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.**   **Discussion:**

Plaintiff argues that the ALJ's decision denying Plaintiff disability benefits was not

supported by substantial evidence.  Plaintiff also argues that the ALJ committed reversible error

when he wrongfully concluded that if the Plaintiff stopped the substance abuse, she would not

meet a listing-level severity.  (Doc. 8 at p. 4).

In a case such as this, where the medical records indicate Plaintiff's drug addiction, 20

C.F.R. § § 404.1535(b), 416.935(b) provide:

> (1) The key factor we will examine in determining whether drug addiction or alcoholism
> is a contributing factor material to the determination of disability is whether we would
> still find you disabled if you stopped using drugs or alcohol.
> (2) In making this determination, we will evaluate which of your current physical and
> mental limitations, upon which we based our current disability determination, would
> remain if you stopped using drugs or alcohol and then determine whether any or all of
> your remaining limitations would be disabling.
> (i) If we determine that your remaining limitations would not be disabling, we will find
> that your drug addiction or alcoholism is a contributing factor material to the
> determination of disability.
> (ii) If we determine that your remaining limitations are disabling, you are disabled
> independent of your drug addiction or alcoholism and we will find that your drug
> addiction or alcoholism is not a contributing factor material to the determination of
> disability.

-15-

In the present case, the ALJ properly followed the process outlined above in finding that Plaintiff's drug addiction was a contributing factor material to the determination of disability.

### A. Impairments:

Plaintiff contends that based on the medical evidence of record, she would meet a listing without the substance use. (Doc. 8 at p. 5). The Court disagrees. The ALJ properly noted, and the medical records support, that if Plaintiff stopped the substance use, the remaining limitations of mood disorder and anxiety would not meet or medically equal the criteria of listings 12.04 or 12.06. The ALJ found that in terms of "paragraph B" criteria, Plaintiff would have mild restriction in activities of daily living if the substance use was stopped. He referenced Plaintiff's condition while at Decision Point on September 27, 2008, indicating Plaintiff was neat in appearance and had good eye contact. Toward the end of her stay at Decision Point, it was noted that Plaintiff attended all sessions with good progress, maintained abstinence for a period of 42 consecutive days, verbalized acceptance of her diagnoses, completed all treatment plan goals, was consistently involved in the 12-step community, identified maladaptive behavioral patterns and solutions to same, established a sound aftercare plan promotive of her continued recovery, demonstrated the ability to apply effective problem solving skills, and that her prognosis was good. (Tr. 639). Plaintiff also reported to Dr. Efird that she could drive unfamiliar routes, shop independently, handle personal finances, and go swimming and fishing with her boyfriend regularly. (Tr. 700). The Court agrees with the ALJ that in terms of social functioning, Plainitff had only moderate difficulties, when not engaging in substance abuse. The same can be said for Plaintiff's concentration, persistence or pace. The records from Decision Point referenced above prove that when Plaintiff stopped the substance abuse, she was able to complete assignments and

-16-

treatment goal plans.

In her Psychiatric Review Technique form, completed on October 1, 2007, Dr. Gale found that Plaintiff had mild degree of limitation in restriction of activities of daily living; moderate degree of limitation in difficulties in maintaining social functioning and concentration, persistence , or pace, and had one or two episodes of decompensation, each of extended duration. She further found that the current medical records indicated Plaintiff was feeling better and was sustaining abstinence and was capable of unskilled work.  In her Mental RFC Assessment, Dr. Gale found Plaintiff was able to perform work where interpersonal contact was incidental to work performed, for example, assembly work; where complexity of tasks was learned and performed by rote, with few variables, where little judgment was used; and where supervision required was simple, direct and concrete.  On July 31, 2009, Dr. Efird, in his mental Diagnostic Evaluation, found that Plaintiff had the capacity to perform basic cognitive tasks required for basic work-like activities.  He felt that Plaintiff's ability to perform most daily activities was impaired by motivation. All during the relevant time period, except when Plaintiff was hospitalized or was treated in a facility, Plaintiff was able to perform household chores and handle her personal care.  By the end of Plaintiff's stay at Decision Point, the records show that Plaintiff completed her assignments and all treatment goal plans.

Finally, although Plaintiff's initial hospitalizations in June and September of 2006 related to abdominal cramps, depression, and suicidal ideation, and in February of 2007 for upper respiratory infection, all of Plaintiff's subsequent hospitalizations related to substance abuse.

Accordingly, the Court believes that Plaintiff has failed to meet her burden of proving that, absent her drug abuse, she either met or equaled the criteria of Listing 12.04 or 12.06, and

-17-

that there is substantial evidence to support the ALJ's determination that, absent Plaintiff's substance abuse, Plaintiff's mood disorder and anxiety would not meet or medically equal the criteria of Listings 12.04 or 12.06.

      **B.**     **Subjective Complaints and Credibility Analysis:**

The ALJ found that if the Plaintiff stopped the substance use, the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. However, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment.

In <u>Polaski v. Heckler</u>, 739 F.3d 1320, 1322 (8th Cir. 1984), the Eighth Circuit Court of Appeals stated that the ALJ may discredit subjective complaints of pain if there are inconsistencies in the evidence as a whole. <u>Id</u>. The factors the ALJ is to consider when determining if the Plaintiff's complaints of pain are credible include: the absence of an objective medical basis that supports the severity of the subjective complaints; Plaintiff's daily activities; the duration, frequency, and intensity of the Plaintiff's pain; precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and functional restrictions. <u>Id</u>. If the ALJ discredits the testimony and explicitly gives good reason for doing so, the Court is bound by the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. <u>Robinson v. Sullivan</u>, 956 F.2d 836, 841 (8th Cir. 1992); <u>see</u> <u>also</u> <u>Bradley v. Astrue</u>, 528 F.3d 1113, 1115 (8th Cir. 2008); <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007).

In February of 2007, Plaintiff reported that she had not had a panic attack since Christmas, and had no urges to use drugs. She attended church regularly and had new friends

who did not use drugs.  However, on June 28, 2007, Plaintiff was hospitalized for drug ingestion, stating that she took six Klonopin, hoping for the rush.  Dr. Farrow opined that Plaintiff had been using Klonopin in an addictive fashion.  On July 5, 2007, although Plaintiff reported to Dr. Farrow that she was doing much better, her parents reported that she was taking Seroquel too much, was very agitated, and was totally out of control.  In 2008, Dr. Farrow, Diane Lyddon and Donna Copeland noted that although Plaintiff denied drug abuse, she appeared to be drug-seeking, and her body language was similar to one who used methamphetamine or other stimulants.  Plaintiff was ordered to treatment and hospitalized in the detoxification unit at Decision Point on August 25, 2008.  On July 29, 2009, although Plaintiff denied use of illegal substances, she asked Dr. Efird if he could write her a prescription for Klonopin.  Dr. Efird stated that drug seeking behavior certainly appeared to be a possibility.

The Court finds that there is substantial evidence to support the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.     RFC Assessment:**

The ALJ found that if Plaintiff stopped the substance use, she would have the RFC to perform a full range of work at all exertional levels, with certain limitations.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual

-19-

functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).

Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical

evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart,

353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a

claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ relied heavily on the observations/reports made during

Plaintiff's two hospitalizations, when she did not have access to illegal and/or unauthorized

prescription medications, since he found that most of the records, except for her hospitalization,

indicated the possibility of ongoing polysubstance abuse. He accurately noted that when Plaintiff

was hospitalized in August of 2007, after the first week of hospitalization, she had no panic

attacks, seemed to be very calm and quiet, and was able to establish meaningful interactions with

other individuals. He also accurately relied upon records from Decision Point in August 2008,

which show that Plaintiff reported tremors, acute anxiety or other features of withdrawal upon

cessation of substance use. The ALJ further found:

> By September 10, 2008, the claimant reported that she was feeling much better, and
> records after that time show that she was neat in appearance and had good eye contact,
> that she attended all sessions with moderate progress and that she completed her
> treatment plan goals, including assignments. At the time of her discharge, it was noted
> that claimant had maintained abstinence for a period of 42 consecutive days and that she
> had demonstrated the ability to apply effective problem solving skills.

(Tr. 55). The ALJ stated that he considered the opinions of the state agency medical consultants

who provided assessments at the initial and reconsideration levels and concurred with their

opinions absent polysubstance abuse. He also considered the Supplemental Questionnaires of

Dr. Farrow and Ms. Copeland, and found them to be inconsistent with the record as a whole

-20-

absent the Plaintiff's polysubstance abuse. The Court believes this finding was supported by the

evidence, since Dr. Farrow and Ms. Copeland both suspected that in spite of Plaintiff's

statements to the contrary, Plaintiff might still be using some type of stimulant and was still

drug-seeking. The ALJ did not give Dr. Efird's opinion controlling weight, based on Dr. Efird's

own statement that several questions regarding the reliability and validity of reported information

were raised.

After reviewing all of the evidence of record, the Court finds that the ALJ properly

addressed the various opinions and gave sufficient reasons as to why he did or did not give them

weight. Accordingly, the Court finds substantial evidence to support the ALJ's RFC findings.

### D.     Hypothetical Proposed to Vocational Expert

The ALJ proposed the following written hypothetical to the VE:

Please assume a hypothetical person (younger individual) with high school education and
the same work history as the claimant. This person has moderate limitations in
maintaining social functioning and concentration, persistence and pace. Moderately
limited means that there is more than a slight limitation but the person can perform in a
satisfactory manner. She can perform work where interpersonal contact is incidental to
the work performed, complexity of tasks is learned by rote, with few variables and little
judgment. Supervision required is simple, direct, and concrete. Assume there is no past
relevant work to which the person can return and that transferable skills are not an issue.
Are there jobs in the national and regional economy this person can do? If so, please list
examples, three if possible, along with DOT identification, and relevant numbers in the
state and national economies.
    1. Kitchen helper/dishwasher
    2. Packager, machine
    3. Maid/hotel-motel

(Tr. 250-251).

After thoroughly reviewing the hearing transcript, along with the entire evidence of

record, the Court finds that the hypothetical the ALJ proposed to the VE fully set forth the

-21-

impairments which the ALJ accepted as true and which were supported by the record as a whole.

See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the

VE's response constitutes substantial evidence supporting the ALJ's conclusion that if Plaintiff

stopped the substance use, there are jobs in the national economy that Plaintiff would be able to

perform.

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision denying the Plaintiff benefits, and affirms the ALJ's

decision.  Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 23rd day of August, 2011


/s/ *Erin L. Setser*
_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)